IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CHRISTY M. RUSSELL ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| ) | |
| vs. ) | |
| ) | |
| DARLENE M. RUSSELL, individually ) | |
| and in her official capacity as ) | |
| LOUDON COUNTY CLERK, ) | |
| and LOUDON COUNTY, TENNESSEE ) | |
| ) | Jury Demand |
| Defendants ) | |
| ) | |

# COMPLAINT

Comes the Plaintiff, CHRISTY M. RUSSELL (hereinafter "Plaintiff Russell"), and sues the Defendants, DARLENE M. RUSSELL (hereinafter "Defendant Russell"), individually and in her official capacity as LOUDON COUNTY CLERK, and LOUDON COUNTY, TENNESSEE (hereinafter "Loudon County"), and respectfully shows this Honorable Court as follows:

## I. PRELIMINARY STATEMENT

1. This action arises from Defendants' conduct towards Plaintiff in violation of the First and Fourteenth Amendments to the United States Constitution, as actionable pursuant to 42 U.S.C. § 1983.

- 1 -

## II. JURISDICTION AND VENUE

2. The matter in controversy involves questions of federal law, giving the Court original jurisdiction of this action pursuant to the provisions of 28 U.S.C. §§ 451, 1331, 1337, and 1343.

3. Plaintiff Russell was employed by Defendant Loudon County and venue is therefore proper with this Court pursuant to 28 U.S.C. § 1391.

## III. PARTIES

4. Plaintiff Russell is a citizen and resident of Loudon County, State of Tennessee.

5. Defendant Darlene Russell is the County Clerk of Loudon County, Tennessee and is a resident of Loudon County, Tennessee. She may be served with process at 17920 Vonore Road, Loudon, Tennessee, 37774. She is being sued both individually and in her official capacity as the County Clerk of Loudon County, Tennessee.

6. Defendant Loudon County is a political subdivision of the State of Tennessee. It may be served with process at 101 Mulberry Street, Loudon, Tennessee, 37774.

7. The Plaintiff reserves the right to amend this Complaint with leave of court to name and/or substitute as defendants any other legal entities which may later be discovered to be responsible for the wrongful conduct alleged herein.

## IV. BACKGROUND FACTS

### A. PLAINTIFF RUSSELL'S EMPLOYMENT

8. In January, 2007, Plaintiff Russell started her employment with the Loudon County Clerk's office as a Deputy Clerk.

9. Plaintiff Russell was not employed by Loudon County in a policymaking position.

10. Plaintiff Russell was qualified for her job and had successfully performed same for over seven (7) years.

11. Plaintiff Russell had no employment discipline or write-ups until she was abruptly terminated following the May 6, 2014 election.

### B. PATTERN & PRACTICE OF WRONG-DOING IN CLERK'S OFFICE

12. During Plaintiff Russell's employment, she observed numerous activities that appeared to be violations of county policy or Tennessee state law. Defendant Russell either instructed employees to engage in these practices or knowingly participated in same. Defendant Russell found no fault with any of the practices until she wanted to fire Plaintiff Russell and needed a pretextual reason to do so.

13. Defendant Russell allowed employees to accept monies from customers to be used for lunch expenses for employees. She also allowed employees to accept jewelry, picture frames, lotions and wines from customers. Defendant Russell never told anyone that they could not accept these gifts. Defendant Russell never fired anyone for accepting these gifts.

14. Occasionally, the employees of the Loudon County Clerk's office received gift cards from members of the public. Everyone in the office received Victoria's Secret gift cards from a member of the public at Christmas time, 2013. Defendant Russell never told anyone that they could not accept the cards, and she accepted a card herself. Defendant Russell never fired anyone for accepting these cards.

- 3 -

15. Plaintiff Russell and all other Deputy Clerks were instructed to require individuals who wanted to be married to pay twenty dollars ($20) cash, in additional to the required government fee. P. Beacham was instructed to tell the couples wanting to be married by the Clerk that if they did not have cash to pay the additional twenty dollars ($20), the couple needed to leave, go get the cash and then return to be married. Plaintiff Russell was told to get the additional twenty dollars ($20) if the couple "looked like they had it." Defendant Russell told Plaintiff Russell that if the couple looked poor, she did not have to ask for the money. Defendant Russell never disciplined or fired anyone for obtaining this unlawful compensation for Defendant Russell's use.

16. Once the cash was received, Plaintiff Russell and all other Deputy Clerks were told by Defendant Russell that they should hand the money directly to Defendant Russell or place the cash in a box in the back of the office, where Defendant Russell exercised complete control over the cash funds. Those funds were never turned into the County or the State of Tennessee, but were used by Defendant Russell for her own purposes and as a general slush fund for office events and parties. Such funds added up to significant amounts of money over the course of the year.

17. Soliciting unlawful compensation by a public servant is a Class E felon under T.C.A. § 39-16-104.

18. If customers did not take receipts when they paid cash for services in the Clerk's office, the cash was also placed into the general slush fund box. For example, when a customer paid cash for a copy of a marriage certificate but declined the receipt. Defendant Russell condoned and encouraged this behavior. Defendant Russell never disciplined or fired anyone for diverting these monies for Defendant Russell's use.

-4-

19. While Defendant Russell was Chief Deputy Clerk and into the period of her being Clerk, she instructed Plaintiff Russell that the Clerk's office did not marry interracial couples. If an interracial couple came into the office and wanted the marriage ceremony to be performed, Plaintiff Russell was told to shut the Clerk's door and tell the couple that the Clerk was not available to marry them.

20. Plaintiff Russell followed instructions for the first portion of her employment. Later, she confronted Defendant Russell and said it was her belief the Clerk should marry any couple, mixed race or not, who wanted to be married. Plaintiff Russell said it was her opinion that it was wrong for a government office to deny services to anyone based on their race. Defendant Russell told Plaintiff Russell that she had decided to make that change and had already spoken to Betty Wright about the change.

21. Defendant Russell told employees that they were allowed to look up a vehicle price and use the lowest price listed for taxing certain favored members of the public, even if the purchaser admitted paying a higher price. Defendant Russell never disciplined or fired anyone for doing this.

22. Defendant Russell told employees that they were allowed to register vehicles as "gifts" between unrelated parties, as long as they took down the driver's license numbers of both the seller and the buyer. Defendant Russell never disciplined or fired anyone for doing this.

23. Certain favored members of the public were allowed to sign another person's name to a title, when the titleholder was not present at the Clerk's office. Defendant Russell knew of this practice and allowed it. Defendant Russell never disciplined or fired anyone for doing this.

24. Defendant Russell herself, and her employees, looked up vehicle tag numbers for certain favored members of the public without filing the required information sheet and fee for doing so. This allowed people to privately find out who owned a particular vehicle without any record of such inquiry. Defendant Russell never disciplined or fired anyone for doing this.

25. Defendant Russell has allowed employees to replace lost vehicle tag registration stickers for certain favored members of the public without a required police report. Defendant Russell never disciplined or fired anyone for doing this.

26. During pre-election periods, Defendant Russell would tell employees to look the other way on matters in order to "not make voters mad." She would tell the employees not to assign a title number to the vehicle, send the paperwork to Nashville and see if the state would accept the documentation. That would allow any rejection letter to be generated by the state and would protect Defendant Russell's political interests. Defendant Russell never disciplined or fired anyone for doing this.

27. On February 26, 2013, Defendant Russell's son-in-law, Kenneth Reed, registered his vehicle through Loudon County when, in fact, it should have been registered in Blount County. This was incorrect registration was known by Defendant Russell. Also, since Tonia Russell Reed (hereinafter "Russell Reed"), Defendant Russell's daughter, is employed as a Deputy Clerk, she also knew the registration on her husband's car was wrong. Defendant Russell never disciplined or fired anyone for doing this.

28. On March 28, 2013, Russell Reed registered her own vehicle through Loudon County when, in fact, it should have been registered in Blount County. This was incorrect registration was known by Defendant Russell. Also, since Russell Reed is employed as a

-6-

Deputy Clerk, she also knew the registration on her car was wrong. Defendant Russell never disciplined or fired anyone for doing this.

29. On May 8, 2013, Defendant Russell notarized a document for Plaintiff Russell that contained two signatures of people who were not present at the time of notarization. The notarization of signatures without the signers being present was an accepted practice. Defendant Russell never disciplined or fired anyone for doing this.

30. On March 5, 2014, Russell Reed filed, "Report of Casual or Isolated Sale of Vessel or Boat," stating that the purchase price she had paid for a boat was $1,000, when in fact she paid thousands of dollars more. This under-reporting of taxes was commonplace in the Clerk's office and was sanctioned by Defendant Russell. Defendant Russell never disciplined or fired anyone for doing this.

31. It was a practice of the Loudon County Clerk's office to allow favored members of the public to do "even trades" to avoid taxes. If the member of the public marked the value of two sale items as being the same (regardless of the actual value of the items), the Clerk's form listed the transaction as an "even trade" and no taxes were collected. Defendant Russell knew of this practice and condoned it. Defendant Russell never disciplined or fired anyone for doing this, until she decided to fire Plaintiff Russell and needed a reason to do so.

32. On March 10, 2014, Defendant Russell allowed a Deputy Clerk to do an "even trade" for a customer, knowing that the customer did not own the vehicle that was traded for a POLS (Point of Load power converter). Defendant Russell instructed the Deputy Clerk to allow the "even trade" to go through, but to not assign a title number. Defendant Russell knew of this action and condoned it.

- 7 -

33. On April 15, 2014, Deputy Clerk Paige Beacham (hereinafter "P. Beacham") asked Plaintiff Russell if she would enter a Vehicle Registration for a transaction for Bryan Beacham (hereinafter "B. Beacham,") Paige Beacham's husband. It was an "even trade." Plaintiff Russell stated that she was busy but P. Beacham could use her computer. P. Beacham entered the transaction into the computer.

34. When a Deputy Clerk's computer is used for a transaction, the initials of that Deputy Clerk show on the transaction, no matter who typed in the transaction.

35. On April 19, 2014, Defendant Russell completed an official vehicle registration for her son's truck. Defendant Russell asked Plaintiff Russell if she thought the truck would "go for $3,000." The sale price was listed at $3,000, which determined the tax rate paid. The sale price is less than half of the Blue Book value.

36. Defendant Russell's son, Matthew Russell, registered his vehicle through Loudon County when, in fact, it should have been registered in Monroe County. This was incorrect registration was known by Defendant Russell. The date of issue was May 5, 2014.

37. None of the employees who handled the above transactions were disciplined or terminated, except Plaintiff Russell.

### C. **LOUDON COUNTY CLERK PRIMARY ELECTION IN 2014**

38. Defendant Russell ran for Loudon County Clerk in the primary election held in May, 2014.

39. Plaintiff Russell had inquired of Defendant Russell what Defendant Russell would do if another employee, Tammy Wampler (hereinafter "Wampler"), chose not to support Defendant Russell for re-election. Defendant Russell's response was, "I will get rid of her. I won't keep her."

- 8 -

40. Plaintiff Russell is not related to Defendant Russell.

41. Plaintiff Russell is married to Michael Russell, who has a cousin named Emily Lorenz (hereinafter "Lorenz").

42. Lorenz also ran for the position of Loudon County Clerk in the primary election that was held on May 6, 2014.

43. When Lorenz picked up her petition to run for Loudon County Clerk, members of the Clerk's office were told by Russell Reed that Plaintiff Russell had told Lorenz to run against Defendant Russell. Russell Reed expressed her anger and upset about her belief that Plaintiff Russell was behind the Lorenz candidacy.

44. Russell Reed then stated to other employees, "You find out who your friends are. You don't fire people before the election, you fire someone after the election."

45. Plaintiff Russell became aware that Defendant Russell was angry with her over Plaintiff Russell's support for candidate Lorenz. Plaintiff Russell had been told of the statements by Defendant Russell's daughter about firing people after the election.

46. Plaintiff Russell heard that Defendant Russell had told people that she believed Plaintiff Russell would support her opponent, Lorenz.

47. Plaintiff Russell, Defendant Russell and Russell Reed had a conversation regarding the Lorenz candidacy. Both Defendant Russell and Russell Reed told Plaintiff Russell that they had been informed by several people in the community that Plaintiff Russell was supporting Lorenz. Russell Reed said, "We have heard that you are against us."

48. Plaintiff Russell stated that she could work for whomever won the election, Defendant Russell or Lorenz. Plaintiff Russell said that the reason she works at a job is for her family and their well-being, and no one else.

49. However, Plaintiff Russell stated that she refused to denigrate Lorenz in the same way that Clerk's office employees had denigrated the previous candidate opposing Defendant Russell, Angie Vittatoe. Plaintiff Russell stated that Lorenz was family and she would not "bad mouth" Lorenz, nor would she be mean to Lorenz.

50. From that day forward, Defendant Russell changed her demeanor and actions in a negative way toward Plaintiff Russell.

51. Plaintiff Russell said nothing and did nothing during work hours in support of Lorenz or against Defendant Russell.

52. Defendant Russell pointedly did not ask Plaintiff Russell to participate in any election activities on Defendant Russell's behalf, although Defendant Russell did ask the other employees and work was done on her campaign on county time.

53. Russell Reed routinely told members of the public, "Don't forget to vote for my Mom," while she was being paid as a county employee. This was a violation of Section 6.5 of the Loudon County Policy and Procedure Handbook. Defendant Russell condoned this action.

54. Defendant Russell handed out campaign signs from her car to people while she was on duty at the Loudon County Clerk's office. This was a violation of Section 6.5 of the Loudon County Policy and Procedure Handbook.

55. County employees made campaign posters on county time for Defendant Russell while they were being paid as county employees. This was a violation of Section 6.5 of the Loudon County Policy and Procedure Handbook. Defendant Russell condoned these actions.

56. On April 4, 2014, County employees Carrie McKelvey (hereinafter "McKelvey") and Wampler prepared for Defendant Russell's campaign "meet and greet" while still on county time, being paid as county employees. Their time sheets reflect this. This was a violation of Section 6.5 of the Loudon County Policy and Procedure Handbook. Defendant Russell condoned these actions.

57. An employee of the Loudon County Clerk's office called a member of the public and told him that there would be "no more favors" if he did not remove the Lorenz campaign sign from his lawn. This was a violation of Section 6.5 of the Loudon County Policy and Procedure Handbook. Defendant Russell condoned this action.

### D. PLAINTIFF RUSSELL'S FIRST REPORT OF RETALIATION

58. In March, 2014, Plaintiff Russell called Tammy Reynolds (hereinafter "Reynolds"), Human Resources manager for Loudon County. Plaintiff Russell told Reynolds that she was being targeted by Defendant Russell and she predicted that she would be fired if Defendant Russell won the election.

59. Reynolds assured Plaintiff Russell that it would be illegal for Defendant Russell to retaliate against Plaintiff Russell.

60. The retaliation by Defendant Russell against Plaintiff Russell continued. For example, Defendant Russell ordered food for the employees on Administrative Professionals Day and all other employees received a meal, but Plaintiff Russell did not. No one commented on the fact Plaintiff Russell was the only employee not to receive a meal and no effort was made to correct the situation.

61. On or about April 21, 2014, another employee informed Plaintiff Russell that Defendant Russell was secretly checking Plaintiff Russell's work, hoping to find mistakes.

62. On Election Day, all Clerk's office employees, except Plaintiff Russell and P. Beacham, were assigned spots at polling stations to support Darlene Russell. When the employees posed for a picture of "Team Russell," Plaintiff Russell and P. Beacham were excluded.

63. The primary election was held on May 6, 2014. Defendant Russell was re-elected.

64. On May 9, 2014, Plaintiff Russell entered an Official Vehicle Registration and then deleted it because it was supposed to be a Monroe County transaction, not Loudon County. Defendant Russell reentered the information herself into the computer, despite knowing it was revenue that should go to another county, and told employees, "Christy has not seen me mad, but she is about to."

65. On May 9, 2014, Plaintiff Russell was called into the office by Defendant Russell and Human Resources Manager Reynolds. She was shown the paperwork for B. Beacham's "even trade" transaction. Defendant Russell asked if Plaintiff Russell did that transaction. Plaintiff Russell looked at the paperwork, saw her initials on the page, and answered, "Yes."

66. Also on May 9, 2014, P. Beacham was interviewed about the "even trade" transaction for her husband. Beacham initially recalled that Plaintiff Russell had done the transaction. P. Beacham pointed out to Defendant Russell that "even trades," were condoned at the Loudon County Clerk's office on a routine basis, even when they weren't really an "even trade."

67. P. Beacham was also asked if she had ever accepted a gift card. P. Beacham pointed out to Defendant Russell that Defendant Russell had herself accepted gifts, such as the Victoria's Secret gift card at Christmas,

68. Shortly thereafter, Plaintiff Russell and Beacham discussed the paperwork on B. Beacham's vehicle. They recalled that Plaintiff Russell had been too busy to complete the paperwork for B. Beacham's transaction. They reported this to Defendant Russell and Reynolds. Defendant Russell said she did not believe P. Beacham and accused her of "changing her story." Plaintiff Russell explained that with so many transactions in the office, they had to think about the paperwork to even remember what had happened several weeks earlier on April 15, 2014.

70. P. Beacham offered to provide paperwork to prove that her husband's transaction was a legitimate "even trade," but Defendant Russell declined. Defendant Russell told P. Beacham that she could be fired for doing the "even trade" paperwork, despite the approved pattern and practice of doing so for numerous other individuals.

### E. **PLAINTIFF RUSSELL REPORTS RETALIATION AGAIN**

71. On May 14, 2014, Plaintiff Russell again contacted Human Resources Manager Reynolds. She told Reynolds that Defendant Russell participated in and allowed all types of infractions, but was suddenly blaming Plaintiff Russell for processing the Beacham "even trade," (which Plaintiff Russell did not even do) as though such a thing were not allowed. Plaintiff Russell again informed Reynolds that she was being retaliated against and singled out for discipline due to her political support for candidate Lorenz.

72. On May 15, 2014, Defendant Russell terminated Plaintiff Russell for "misconduct," and wrote, "This office is expected to operate with a strong commitment to integrity."

73. At the time of Plaintiff Russell's discharge, she was making $14.52 per hour as a full-time employee. She received employment benefits, some of which were paid for by the county and some of which she had access to by virtue of her employment, as follows: sick leave, annual leave, Tennessee Consolidated Retirement benefits, dental insurance, family life insurance, cancer insurance, critical illness insurance, accidental insurance, term life insurance, and voluntary short term disability.

74. Plaintiff Russell has mitigated her damages by seeking and obtaining employment, albeit at a lower wage with significantly fewer benefits.

## V. CAUSES OF ACTION

### A. VIOLATION OF THE FIRST AMENDMENT

75. Paragraphs 1 through 74 are hereby realleged and incorporated in full by reference as if fully set forth herein.

76. This cause of action is pled against Defendant Russell individually and in her capacity as Loudon County Clerk, and is also pled against Loudon County.

77. Loudon County authorized Defendant Russell to hire and fire county employees on its behalf. Loudon County issued an employee handbook, which purported to control employee discipline, but gave Defendant Russell the authority to hire and fire at will with disregard to the employee handbook.

78. The First Amendment prohibits government officials from terminating government employees based upon their political associations.

79. Defendant Russell fired Plaintiff Russell in retaliation for Plaintiff Russell's political support of Lorenz and her association with Lorenz through relation by marriage.

80. Defendant Russell violated Plaintiff Russell's First Amendment rights by retaliating against her because of her political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983.

81. Defendant Russell used the power of her office, including her power to employ and terminate employment so as to retaliate against Plaintiff for her political activity.

82. Defendant Loudon County violated Plaintiff Russell's First Amendment rights by retaliating against her because of her political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983.

83. Defendant Russell had final authority to make personnel decisions for the Clerk's office, therefore Loudon County is actually responsible for Defendant Russell's actions as they were official municipal policy.

84. Further, County Human Resources Manager Reynolds participated in the decision to fire Plaintiff Russell, despite Plaintiff Russell's explicit notification to Reynolds, twice, that retaliation was occurring and that her firing would be for retaliatory reasons.

85. Reynolds was aware from both P. Beacham and Plaintiff Russell that the reason being cited to fire Plaintiff Russell was factually inaccurate (Plaintiff Russell did not, in fact, enter the transaction in question) and that Defendant Russell had condoned identical transactions from numerous employees in the past without disciplining or firing those employees.

86. Plaintiff Russell was engaged in a constitutionally protected activity touching upon a matter of public concern by supporting Emily Lorenz for County Clerk. Plaintiff

Russell sincerely believed that Emily Lorenz would be a better County Clerk for Loudon County, which would benefit the citizenry of Loudon County.

87. Defendant Russell, acting under color of law, fired Plaintiff Russell within ten (10) days of the election results.

88. Defendant Russell knew at the time she discharged Plaintiff Russell that both state and federal law prohibit utilizing political considerations as a factor in determining employment.

89. The Defendants' actions would likely chill a person of ordinary firmness from continuing to support an opposition candidate if they would lose their job.

90. The adverse action of termination was motivated, at least in part, as a response to the exercise of Plaintiff's constitutional rights.

91. The Defendants' actions were knowing and in bad faith.

92. As a result of this illegal conduct, Plaintiff Russell has suffered damages, including lost wages and benefits, humiliation, embarrassment and inconvenience.

**B. VIOLATION OF THE FOURTEEN AMENDMENT**

93. Paragraphs 1 through 92 are hereby realleged and incorporated in full by reference as if fully set forth herein.

94. This cause of action is pled against Defendant Russell individually, and in her capacity as Loudon County Clerk, and is also pled against Loudon County.

95. Defendant Russell violated Plaintiff Russell's Fourteenth Amendment rights of equal protection to property by denying her employment because of her political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983.

96. Defendant Loudon County violated Plaintiff Russell's First Amendment rights by retaliating against her because of her political endorsement of an opposition candidate, in violation of 42 U.S.C. § 1983.

97. Defendant Loudon County was on notice that Plaintiff Russell's termination was based upon erroneous claims and retaliation, yet it allowed Defendant Russell to proceed with the firing. There was no investigation, no notice to Plaintiff Russell, and no hearing.

98. Defendants' wrongful discharge of Plaintiff Russell violated her equal protection rights and due process rights, because she had a reasonable expectation of future employment, which property right was unconstitutionally thwarted by Defendants when they fired Plaintiff Russell without proper notice or hearing.

99. Plaintiff Russell with fired within ten (10) days of the election results.

100. As a result of this illegal conduct, Plaintiff Russell has suffered damages, including lost wages and benefits, humiliation, embarrassment and inconvenience.

## VI. DAMAGES

101. Paragraphs 1 through 100 are hereby realleged and incorporated in full by reference as if fully set forth herein.

102. As a direct and proximate result of each and every of the foregoing acts, conduct, and violations of statutory law by the Defendants as alleged herein, Plaintiff Russell has suffered damages in an amount according to proof, including but not limited to, lost wages, lost benefits, lost interest on wages and benefits, embarrassment, humiliation, inconvenience, loss of lifetime earning capacity, and other incidental and consequential damages and expenses.

103. Plaintiff Russell has incurred expenses and attorneys' fees due to Defendants' actions.

## VII. **PRAYER FOR RELIEF**

104. Paragraphs 1 through 103 are hereby realleged and incorporated in full by reference as if fully set forth herein.

105. As a result of the conduct and actions of the Defendants herein alleged, Plaintiff Russell has no effective, adequate, or complete remedy at law, because Defendants continue to engage in the wrongful practices alleged herein. Therefore, Plaintiff Russell prays:

   A. That the Court assume jurisdiction of this action and that process issue;

   B. That Plaintiff be reinstated to her former position, or one comparable;

   C. That Plaintiff be awarded damages for all damages as alleged herein, including but not limited to, lost wages, lost benefits, interest, humiliation, embarrassment, inconvenience, back pay from the date of discharge with interest, front pay if Plaintiff is not reinstated, and loss of lifetime earning capacity, all according to proof;

   D. For attorneys' fees and costs as allowed by statute;

   E. The failure of Defendant Russell to comply with the law as alleged herein was wilful, and further Defendant Russell knew or should have known that her conduct was prohibited. Plaintiff Russell therefore seeks punitive damages from Defendant Russell.

   F. For such other and further relief which the Court deems just and proper.

106. **PLAINTIFF RESPECTFULLY DEMANDS A TRIAL BY JURY.**

- 18 -

Case 3:14-cv-00344-PLR-HBG   Document 1   Filed 07/23/14   Page 18 of 19   PageID #: 18

Respectfully submitted this 23rd day of July, 2014.

/s/ Katherine A. Young
Katherine A. Young, BPR No. 017178
YOUNG LAW OFFICE, P.C.
6700 Baum Drive, Suite 7
Knoxville, Tennessee 37919
Telephone (865) 474-1284
Facsimile (615) 296-0379
Katherine@younglawknoxville.com

Attorney for Plaintiff

- 19 -